UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
RALPH TANCREDI,

                              Plaintiff,

          -against-
                                                    **07 Civ. 7485 (WCC)**

DAVID HALL, individually, VINCENT
MUSSOLINO, individually, EDWARD
LUCAS, individually, RICHARD "DOE"
and LAWRENCE "DOE",

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................1

FACTS ......................................................................................................................3

STANDARD OF REVIEW ......................................................................................7

ARGUMENT ...........................................................................................................9

    POINT I ..........................................................................................................9

        PLAINTIFF'S FOURTH AMENDMENT CLAIMS MUST BE DISMISSED AS THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF ON AUGUST 8, 2007 ........................................................................9

    POINT II .......................................................................................................11

        PLAINTIFF'S FIRST AMENDMENT CLAIMS MUST BE DISMISSED.........11

    POINT III ......................................................................................................13

        PLAINTIFF'S EQUAL PROTECTION CLAIM MUST BE DISMISSED .........13

    POINT IV ......................................................................................................16

        THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED ...........................16

            A.    Chief Hall Had No Personal Involvement In Any Constitutional Deprivation ...................................................................................16

            B.    The Individual Defendants Are Protected By Qualified Immunity.......................................................................................17

CONCLUSION........................................................................................................19

58623.2 12/10/2007

# TABLE OF AUTHORITIES

*Able v. United States*, 155 F.3d 628 (2d Cir. 1998) ....................................................14

*Ad Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591
(S.D.N.Y. 2007) .......................................................................................................7

*African Trade & Information Ctr. v. Abromaitis*, 294 F.3d 355 (2d Cir. 2001) ...........13

*Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987) ..........................................16

*Allen v. City of New York*, 2007 WL 24796 (S.D.N.Y. 2007) ......................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007) ...........................7

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) ..............................................................13

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) ..................................................................13

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ...........................................................16

*Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998) ......................................................13

*Cortec Industrial, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .....................18

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) .........................................11-12

*Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004) ...........................................................17

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006) ..............................................................8

*Fulton v. Robinson*, 289 F.3d 188 (2d. Cir. 2002) .........................................................9

*Giano v. Senkowski*, 54 F.3d 1050 (2d Cir. 1995) ...................................................13-14

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ..........................................17

*Graham v. Long Island Railroad*, 230 F.3d 34 (2d Cir. 2000) .................................14-15

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ..................................................................7

*Jones v. Maples/Trump*, 2002 WL 287752 (S.D.N.Y. 2002) ........................................11

*Lange v. Town of Monroe*, 213 F. Supp. 2d 411 (S.D.N.Y. 2002) ................................13

*Lee v. Sandberg*, 136 F.3d 94 (2d Cir. 1997)....................................................................17

*Marrero-Gutierrez v. Molina*, 491 F.3d 1 (1st Cir. 2007) ...............................................7

*Marshall v. Sullivan*, 105 F.3d 47 (2d Cir. 1996) ............................................................9

*Miloslavsky v. AES Engineering Society, Inc.*, 808 F. Supp. 351 (S.D.N.Y. 1992), .......9

*Mistretta v. Prokesch*, 5 F. Supp. 2d 128 (E.D.N.Y. 1998) ............................................9

*Mozzochi v. Borden*, 959 F.2d 1174 (2d Cir. 1992)........................................................11

*Pianka v. Manning*, 2005 WL 1421456 (D. Conn. 2005)...............................................12

*Porat v. Lincoln Towers Community Association*, 2005 WL 646093 (S.D.N.Y. 2005)................11

*Posr v. Court Officer Shield #207*, 180 F.3d 409 (2d Cir. 1999)...................................17

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001)............................................17

*Reyes v. City University of N.Y.*, 2007 WL 2186961 (S.D.N.Y. 2007) ...........................8

*Rodgers v. City of Rochester*, 2007 WL 1557465 (W.D.N.Y. 2007) .............................16

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)..............................................................8

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ................................................17

*Sharp v. State*, 2007 WL 24804285 (E.D.N.Y. 2007) ...................................................16

*Shumway v. United Parcel Service, Inc.*, 118 F.3d 60 (2d Cir. 1997) ...........................14

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ....................................9, 11

*Smart v. Goord*, 441 F. Supp. 2d 631 (S.D.N.Y. 2006)...................................................8

*Sweeney v. Leone*, 2006 WL 2246372 (D. Conn. 2006)................................................14

*Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994)..................................................................16

58623.TOA 12/10/2007

## PRELIMINARY STATEMENT

Defendants David Hall, Vincent Musollino and Edward Lucas submit this memorandum of law in support of their motion to dismiss the complaint. As set forth below, the Plaintiff's claims under the First, Fourth and Fourteenth Amendments fail to state a claim upon which relief may be granted.

On August 8, 2007, Plaintiff, a police officer in the Town/Village of Harrison, became involved in a physical altercation in front of a local restaurant/bar known as "Annie's Café." Complaint ¶ 9. At the time of this incident, Plaintiff was on suspension for his involvement in a bar-fight in June 2007. In 2005 Plaintiff had been disciplined for an incident involving abuse of his girlfriend.

Joshua Clark was present at Annie's Café with Plaintiff's ex-girlfriend, Sofia Saenz. Plaintiff, who "coincidentally" happened to be driving past the establishment where Saenz was employed, observed Clark with Saenz, stopped his car (blocking traffic), quickly exited the vehicle, and approached Clark and Saenz. Plaintiff requested that Saenz speak to him but she declined. When Clark asked that Plaintiff leave, he not only refused but exchanged words with Clark, but also bumped his chest into Clark's several times and slapped his arm. Fearing for his and Ms. Saenz's safety, Clark retrieved a small baseball bat from his own car and demanded that Plaintiff leave him and Saenz alone.

Prior to retrieving this bat, Clark asked the owner of Annie's Café to call the police. After the police arrived at the scene, all parties were asked and voluntarily went down to the police station for further investigation. Based on the information it received from Clark and Saenz, as well as Clark's insistence that Plaintiff be charged, Plaintiff was arrested and charged with harassment. Orders of protection were issued against Plaintiff, requiring him to stay away from Clark and Saenz. The order relating to Saenz has largely been ignored by Plaintiff who was again arrested on September 7, 2007 for violating her order of protection.

As noted, Plaintiff is no stranger to bar fights. Just two months prior to his August 2007 arrest, Plaintiff was involved in an altercation in a local bar in which he was investigated for allegedly attempting to assault another patron. After being run into by Plaintiff, the bartender fell backwards into a shelf and injured her back. This incident led to his suspension from the police force and disciplinary charges which are currently pending. Moreover, Plaintiff had also been suspended in 2005 for 20 days after he broke the windshield of Saenz's car and yelled obscenities at her following an apparent argument.

The information the police department had at the time Plaintiff was arrested undisputedly shows that there was probable cause for his arrest on August 8, 2007. Two individuals clearly indicated that Plaintiff was the aggressor in the altercation, as Clark and Saenz voluntarily signed statements to that effect, and Clark insisted that formal criminal charges be pursued against Plaintiff. As a result, there can be no Fourth Amendment claim herein.

Similarly, in light of the fact that there was probable cause for the arrest, the cause of action under the First Amendment must be dismissed because there can be no First Amendment retaliation claim based on an arrest and/or criminal prosecution where the prosecution at issue was supported by probable cause.

In addition, the claim for retaliation under Equal Protection Clause fails as the Second Circuit has held that there can be no claim of retaliation under the Equal Protection Clause of the 14th Amendment.

Finally the individual defendants are all protected by qualified immunity because at the very least, there was arguable probable cause to arrest the Plaintiff. Also, Chief Hall should be dismissed as he played no role in the arrest of Plaintiff.

2

## FACTS

The Plaintiff is a police officer employed by the Town/Village of Harrison Police Department since 2005.

### September 4, 2005 Incident Between Plaintiff and Sofia Saenz

In September 2005, the Plaintiff was involved in an incident with his then-girlfriend, Sofia Saenz. *See* Lucas Aff. ¶ 4; Marraccini Aff. ¶ 4, Musollino Aff. ¶ 7. According to the police reports, Plaintiff went to Ms. Saenz's residence but she was not present. Marraccini Aff. ¶ 4, Ex. 1. He later claimed to see her returning in the early morning hours of September 4, 2005. Marraccini Aff. ¶ 4, Ex. 1. Plaintiff approached her vehicle, and, among other things, according to Ms. Saenz, Plaintiff punched the windshield of her car causing it to break, and yelled obscenities at her. Marraccini Aff. ¶ 4, Ex. 1.

As a result of this incident, Plaintiff was disciplined. However, rather than going through formal discipline under §5711-q of the New York Unconsolidated Laws, Plaintiff elected not to contest any formal charges and agreed to a forfeiture of 20 days of paid leave. Marraccini Aff. ¶ 5, Ex. 2.

### June 2, 2007 Incident at "My Place" Bar

On June 2, 2007, while he was off-duty, Plaintiff was investigated for becoming involved in an altercation with patrons and employees at a bar in Harrison known as "My Place." Lucas Aff. ¶ 4; Marraccini Aff. ¶ 6; Musollino Aff. ¶ 7. Plaintiff allegedly attempted to assault another patron in the bar, but before doing so, ran into the bartender causing her to fall backwards, hit a shelf, and injure her back. Marraccini Aff. ¶ 6, Ex. 3. The bartender even signed a criminal complaint against Plaintiff (Ex. 3). As a result of this incident, Plaintiff was suspended with pay from his position in the Town Police Department. Marraccini Aff. ¶ 7. In addition, on June 26,

58623.2 12/10/2007

2007, Plaintiff was served with disciplinary charges, that are currently still pending, relating to this June 2 incident. Marraccini Aff. ¶ 8.

### August 8, 2007 Incident Outside "Annie's Café"

On August 8, 2007, Plaintiff was involved in yet another altercation outside a restaurant called "Annie's Café." According to Joshua Clark and Sophia Saenz (Plaintiff's former girlfriend), Plaintiff stopped his car in front of Annie's Café — where Ms. Saenz was employed at the time — and quickly exited the vehicle and approached the two of them. Plaintiff requested that Ms. Saenz speak to him but she declined. Eventually Plaintiff bumped the chest of Mr. Clark several times and slapped him on the arm. Marraccini Aff. ¶ 9.

After the police were called to Annie's Café, Sergeant Vincent Musollino and Detective Sergeant Edward Lucas responded to the scene and conducted an investigation. Lucas Aff. ¶¶ 2-3; Marraccini Aff. ¶ 10; Musollino Aff. ¶¶ 2-3. Several other police officers from the Department also responded to the scene, including Police Officers Wong, Favata and O'Mara. Lucas Aff. ¶ 5; Marraccini Aff ¶ 10; Musollino Aff. ¶ 4.

Based on the statements given to the police by the individuals at the scene (*see* Lucas Aff. ¶¶ 5-6; Musollino Aff. ¶ 6) and the observations made at the scene (*see* Lucas Aff. ¶ 5; Musollino ¶ 4), Plaintiff, Mr. Clark and Ms. Saenz were asked to come to the police station for further investigation. Lucas Aff. ¶ 7; Marraccini Aff. ¶ 11; Musollino Aff. ¶ 8. Each voluntarily agreed to do so, and these individuals were each given a ride to police headquarters in separate vehicles. Lucas Aff. ¶ 7; Marraccini Aff. ¶ 11; Musollino Aff. ¶¶ 8, 12.

Once at police headquarters, Ms. Saenz and Mr. Clark were interviewed at police headquarters and provided the Department with written statements. Lucas Aff. ¶ 8, Ex. 4-5; Marraccini Aff. ¶ 12, Ex. 4-5; Musollino Aff. ¶ 9, Ex. 4-5. Plaintiff refused to provide the police with any written statement or interview. Lucas Aff. ¶ 8; Marraccini Aff. ¶¶ 12, 16; Musollino

4

Aff. ¶ 9. Plaintiff, did, however, inform the Department that he did not want Mr. Clark to be arrested. Marraccini Aff. ¶ 16.

According to Clark's August 8, 2007 statement (Ex. 4), the incident occurred as follows:

> At approximately 9 p.m. Sofia and I were leaving Annie's Café and Ralph pulled unaware of who he was I heard Sofia say – "OH SHIT!" Immediately I knew who he was – the "EX". He pulled his car and asked how we were. Asked if Sofia was happy. He then asked how I was and he proceeded to look me up and down. In my unprofessional opinion he looked coked out of his mind. I could see that Sofia was getting upset. I started to rub her back and Ralph said are you going to let him do that in front of me?? He then asked to talked [sic] to me and I said no Sofia is upset and we need to go. He then got angry and kept going after Sofia to talk. After several attempts to grab Sofia to go inside Anne's Café Ralph got extremely vulgar and pointed his finger in my face. He was raging about them being together for 4 years and some other nonsense. Ralph then trapped Sofia in between buildings. I went to grab her to move her inside and Ralph hit my arm. A few chest bumps and name callings later I opened the door to Annie's and asked Annie Perari (owner of Annie's) to call the cops. Out of fear for Sofia's safety, I went to my vehicle and grabbed my bat for protection from the nut-case that was storming around the street. I walked back across the street and pointed the bat at Ralph and said – get the fuck out of here. He then got even more angrier and said what you going to hit me with that. Finally with bat in hand I got Sofia inside. Walking with her inside Ralph followed us in. Annie said the cops are on their way. Ralph said good this asshole just threatened a cop with a bat. I stood in the middle so Ralph couldn't get to Sofia. With the look in his eye god knows what he would have done. The police arrived and he still insisted to talk to her and her response was just leave. In fact that's all she repeatedly said to him from the start of this whole incident.

Lucas Aff. Ex. 4; Marraccini Aff. Ex. 4; Musollino Aff. Ex. 4.

The statement provided by Ms. Saenz corroborated Clark's version of the events:

> At approximately 9 p.m. Josh and I were leaving Annie's Café. Ralph drove by at the same moment. He stopped the car and got out. Ralph kept on asking to talk to me. I asked Josh to wait for me to talk to Ralph. Ralph got jealous that I had to ask Josh and started saying that I shouldn't ask for permission. Ralph was getting upset. He kept saying that he wanted to talk to me but I said it wasn't a good idea. Josh wanted me to go inside the restaurant and when he touched my head to lead me in Ralph

5

> pushed his hand telling him not to touch me. Josh didn't like it and
> went to his car and took a bat. They started yelling and cursing at
> each other. I thought they were going to fight so I went in the
> restaurant. Police came.

Lucas Aff. Ex. 5; Marraccini Aff. Ex. 5; Musollino Aff. Ex. 5.

In addition to providing police with a signed written statement (Lucas Aff. Ex. 4; Marraccini Aff. Ex. 4; Musollino Aff. Ex. 4), Mr. Clark was also interviewed on tape. Lucas Aff. ¶ 9, Ex. 6; Marraccini Aff. ¶ 15, Ex. 6; Musollino Aff. ¶ 10, Ex. 6. During this interview, Mr. Clark requested that an order of protection be issued and specifically stated that he wanted the case to be prosecuted as he was concerned that this kind of incident might happen again. Lucas Aff. ¶¶ 9-10, Ex. 6-7; Marraccini Aff. ¶ 15, Ex. 6; Musollino Aff. ¶ 10, Ex. 6. Mr. Clark signed a formal complaint against Plaintiff relating to the August 8, 2007 incident outside of Annie's Café. Lucas Aff. ¶ 10, Ex. 7; Marraccini Aff. ¶ 18, Ex. 7; Musollino Aff. ¶ 11, Ex. 7.

Based on the information received from Mr. Clark and Ms. Saenz, as well as Mr. Clark's insistence that Plaintiff be charged, Plaintiff was arrested and charged with harassment. Marraccini Aff. ¶ 18, Ex. 7; *see* Lucas Aff. ¶ 12; Musollino Aff. ¶ 13.

On August 8, 2007, the Court issued an order of protection for Mr. Clark requiring Plaintiff to stay away from him. Marraccini Aff. ¶ 19, Ex. 8. Shortly thereafter, at direction of the District Attorney's Office, an order of protection was also issued requiring Plaintiff to stay away from Ms. Saenz. Marraccini Aff. ¶ 19, 8. The effective dates of both Mr. Clark's and Ms. Saenz's order of protection have been extended to August 17, 2008 and September 28, 2008 respectively. Marraccini Aff. ¶ 21, Ex. 9. Although Plaintiff is thus barred from contacting either Mr. Clark or Ms. Saenz, the order of protection relating to Ms. Saenz has largely been ignored by Plaintiff who was again arrested on September 7, 2007 for violations of these court orders. Marraccini Aff. ¶¶ 20-21. These charges are currently pending as well. Marraccini Aff. ¶ 20.

58623.2 12/10/2007

## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007), the United States Supreme Court set forth a new standard governing Rule 12(b)(6) motions to dismiss. In *Twombly*, the Court "explicitly disavowed the oft-quoted statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007) (explaining the implications of *Twombly* on "the standard for assessing the adequacy of pleadings"); *accord Ad Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591, *3 (S.D.N.Y. 2007) (Karas, J.). Ringing the death knell for *Conley*, the *Twombly* Court held that the "no set of facts" language "has earned its retirement" and "is best forgotten." *Twombly*, 127 S. Ct. at 1969.

In *Conley*'s place, the *Twombly* Court announced a new standard by which courts should adjudge the adequacy of pleadings. Now, to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. As the Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and the line "between the factually neutral and the factually suggestive…must be crossed to enter the realm of plausible liability." *Id.* at 1965, 1966 n. 5; *accord Ad Rendon Communications, Inc.*, 2007 WL 2962591 at *3. Thus, the new governing standard is one of "plausibility," not conclusory speculation. *Id.*

This new standard has been applied in employment discrimination cases. *See, e.g.*, *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9-10 (1st Cir. 2007) (affirming dismissal of wrongful demotion claim where allegations in complaint were too speculative to draw inference of

discrimination) *citing Twombly*; *Reyes v. City Univ. of N.Y.*, 2007 WL 2186961, *5 (S.D.N.Y. 2007) (dismissing retaliation claim on a motion to dismiss in light of *Twombly* because Plaintiff "has not 'amplif[ied] his claim with some factual allegation in those contexts where some amplification is needed to render the claim plausible'").

In assessing the legal sufficiency of a claim, the Court may consider documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *See, e.g., Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991); *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) (courts "may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion"). The court may consider those facts alleged in the complaint, as well as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

8

## ARGUMENT

### POINT I

### PLAINTIFF'S FOURTH AMENDMENT CLAIMS MUST BE DISMISSED AS THERE WAS THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF ON AUGUST 8, 2007

"[A]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint...charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *accord Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998); *Miloslavsky v. AES Eng'g Soc'y, Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd without opinion,* 993 F.2d 1534 (2d Cir. 1993), *cert denied,* 510 U.S. 817 (1993). "The veracity of citizen complaints who are the victims of the very crimes they report to the police is assumed." *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997) *quoting Miloslavsky,* 5 F. Supp. 2d at 355; *see also* 2 Wayne LaFave, *Search & Seizure* §3.4(a) at 205 (the Supreme Court has "proceeded as if veracity may be assumed when information comes from the victim of...criminal activity").

As a matter of law, the Fourth Amendment claims asserted by Plaintiff herein are fatally deficient and must be dismissed. Simply put, because Clark and Saenz provided signed written statements to the police attesting to Plaintiff's unlawful conduct, there was probable cause to arrest Plaintiff on August 8, 2007. *Singer*, 63 F.3d at 119. Thus, Plaintiff's Fourth Amendment unlawful seizure claim must fail. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d. Cir. 2002) ("a §1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest"); *Marshall v. Sullivan,* 105 F.3d 47, 50 (2d Cir. 1996) ("The existence of probable cause gives an officer the privilege to arrest and is a complete defense to an action for false arrest.").

9

The conclusory assertion by Plaintiff that Clark was coerced into making any statement is defied by the written police reports as well as Clark's own affidavit submitted herein. Clark specifically states:

> 5.    I voluntarily provided the Police Department with both an oral and written statement on the night of August 8, 2007. At no time was I coerced into making/filing any statement against Ralph Tancredi or anyone. To the contrary, I informed the police that I wished to pursue charges against Mr. Tancredi based on my concern that if I did nothing, he would likely continue his aggressive conduct. Similarly, at no time did anyone induce or coerce me to seek an order of protection against Mr. Tancredi. The police simply asked what I would like to do, and I told them.
>
> 6.    At no time did I observe any member of the Police Department induce or coerce Sophia Saenz to make any statement against Mr. Tancredi. At no time did Ms. Saenz ever tell me that she was coerced by any member of the Department or anyone else to make any statement against Mr. Tancredi.
>
> 7.    In addition, I voluntarily signed a criminal complaint against Mr. Tancredi based on his slapping of my arm. A copy of this statement is annexed hereto. Again, I was not coerced or forced to do so, but rather this was my voluntary decision. Any suggestion that the police coerced me to do anything is false.

Clark Aff. ¶¶ 5-7.

Thus, not only was there a signed statement by the victim but in this case the victim has specifically stated that he voluntarily provided the police with a written statement about Plaintiff's alleged criminal conduct. In light of the foregoing, there can be no doubt that the police had probable cause to arrest the Plaintiff.

10

## POINT II

## PLAINTIFF'S FIRST AMENDMENT CLAIMS MUST BE DISMISSED

In light of the fact that clear probable cause existed to require Plaintiff to come to the police station and as well as for his arrest on August 8, 2007, there can be no viable First Amendment claim.

In order to prove a claim of First Amendment retaliation, a plaintiff must establish the following:

> (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.

*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) *citing Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998). "The Second Circuit has held, however, that no First Amendment retaliation claim based on an arrest and/or criminal prosecution is available where the prosecution at issue was supported by probable cause." *Allen v. City of New York*, 2007 WL 24796, * 22 (S.D.N.Y. 2007) *citing Mozzochi v. Borden*, 959 F.2d 1174, 1179-1180 (2d Cir. 1992). Thus, as stated in *Mozzochi v. Borden*, "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government." 959 F.2d at 1179-1180 (2d Cir. 1992); *accord Singer v. Fulton County Sheriff,* 63 F.3d 110, *119 (2nd Cir. 1995) ("motivation is not a consideration in assessing probable cause"); *Porat v. Lincoln Towers Community Association*, 2005 WL 646093, * 6 (S.D.N.Y. 2005) ("where the facts of a case show a good faith basis to make an arrest — or as here, where there is probable cause to issue an appearance ticket for trespass — a police officer's motive is irrelevant, and a claim of First Amendment retaliation must fail"); *Jones v. Maples/Trump,* 2002 WL 287752, *6 (S.D.N.Y. 2002) ("in assessing whether there was probable cause, the motivations of the arresting or

11

prosecuting officers are not a consideration" (internal citations omitted)); *Pianka v. Manning*, 2005 WL 1421456, *5 (D. Conn. 2005) (where officers had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken.").

Inasmuch as both Clark and Saenz provided the police with sworn, signed statements attesting to what occurred on the night of August 8, 2007, there was clear probable cause to arrest Plaintiff for the conduct described therein. Thus, Plaintiff's First Amendment retaliation claim must be dismissed. *See Curley*, 268 F.3d at 73 (dismissing First Amendment retaliation claim stemming from arrest "because defendants had probable cause to arrest plaintiff").

58623.2 12/10/2007

## POINT III

### PLAINTIFF'S EQUAL PROTECTION CLAIM MUST BE DISMISSED

Plaintiff's equal protection claim fares no better than do his other claims. There are several reasons that require the dismissal of this claim.

First, the Second Circuit has already held that there can be no claim of retaliation under the Equal Protection Clause of the 14th Amendment. *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("Although claims of retaliation are commonly brought under the First Amendment, and may also be brought under Title VII . . . we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of … discrimination."); *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 419 (S.D.N.Y. 2002) (Conner, J.) ("defendants' alleged retaliation in response to plaintiff's sexual harassment complaints is not cognizable as an equal protection violation").

Plaintiff here alleges in Paragraph 14 of the Complaint that:

> Defendant's disparate treatment of Plaintiff as contrasted with Carlucci . . . [was] entirely and/or in substantial respect motivated by a desire to retaliate against him . . .

In light of the overwhelming case law holding that the Plaintiff cannot bring a claim for retaliation under the Equal Protection Clause, such claim must be dismissed.

An equal protection claim also requires "purposeful discrimination, directed at an identifiable or suspect class." *Senkowski*, 54 F.3d at 1057. As Plaintiff here has not identified any such class, the Complaint itself is defective.

Moreover, the Second Circuit has clearly held that where a plaintiff's equal protection claim is premised on an impermissible motive such as a First Amendment violation, the equal protection claim "coalesces" with the First Amendment claim. *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) *citing African Trade & Info. Ctr. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002). Since probable cause existed for the arrest thereby defeating Plaintiff's First Amendment claim,

58623.2 12/10/2007

his equal protection claim cannot independently withstand this motion. *See Sweeney v. Leone*, 2006 WL 2246372, * 11 (D. Conn. 2006).

Nonetheless, even if, *arguendo*, such a claim could be pursued, because Plaintiff has failed to allege he was treated differently than any other "similarly situated" individual, his equal protection claim must be dismissed. *See Graham v. Long Island Railroad*, 230 F.3d 34, 39 (2d Cir. 2000) (to have a viable equal protection claim, plaintiff must come forth with evidence comparing himself to individuals that are "similarly situated in all material respects."). "The Equal Protection Clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). The necessary corollary is that "of course the government can treat persons differently if they are not similarly situated." *Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998); *see Shumway v. United Parcel Service, Inc.*, 118 F.3d 60 (2d Cir. 1997) (affirming summary judgment where discrimination plaintiff failed to prove she was "similarly situated" to any male employees). Thus, as a general rule, the equal protection guarantees of the Constitution are satisfied when the government differentiates between persons for a reason that bears a rational relationship to an appropriate governmental interest. *Able*, 155 at 631.

In apparent support of his equal protection claim, Plaintiff attempts to allege that he was treated differently than Police Officer Robert Carlucci who was neither disciplined nor arrested after striking a civilian in June 2006.[1]  Complaint ¶¶ 6-7. Significantly, the Complaint fails to state that at no point during the June 2006 incident was any criminal complaint signed against Officer Carlucci. *See* Marraccini Aff. ¶ 23. Certainly, those circumstances are completely at odds with those herein, as here, Plaintiff's arrest was based on a victim's filing of a criminal complaint (Ex. 7) and his is insistence that the matter be prosecuted (as well as two

---

[1] "Coincidentally," the law firm of Lovett & Gould is presently representing the plaintiff in this matter filed against Officer Carlucci and the Town. *See Carillo et al v. Carlucci and Town/Village of Harrison,*. *06-cv-14443* (KMK)

58623.2 12/10/2007

uncontroverted statements from Clark, the victim, and Saenz, a witness). Also, Plaintiff had a history of engaging in physical altercations with Saenz and others. *See* Marraccini Aff. ¶¶ 6-8. Indeed, Plaintiff had previously been disciplined for engaging in such misconduct against Saenz. *See* Marraccini Aff. ¶¶ 5, 7-8.

Moreover, with regard to the allegations of improper conduct engaged in by Officer Carlucci towards his brother-in-law, Anthony Petrozza (*see* Complaint ¶ 8), the fact remains that Mr. Petrozza did not sign a complaint against Officer Carlucci nor did anyone else. *See* Marraccini Aff. ¶ 23. Unlike Plaintiff's situation where the victim voluntarily signed a complaint and insisted on pressing criminal charges, there, no such victim existed. As such, the two situations are entirely different and there is a rational basis for the difference.

Considering the greatly differing situations that existed with regard to Officer Carlucci's conduct and that of the Plaintiff, the two cannot be said to be similarly situated. *See Graham*, 230 F.3d at 39 (individuals must be "similarly situated in all material respects"). As for Officer Carlucci, no complaint was ever filed against him by anyone – *i.e.*, no individual insisted that he be prosecuted for any crime nor was there any evidence that he had committed any crime. In fact, when one individual was asked if he wished to pursue criminal charges against Officer Carlucci, he expressly declined to do so. In sharp contrast, here, both the victim and witness to Plaintiff's conduct signed statements attesting to what Plaintiff had done, and at no time did Plaintiff ever offer a statement in defense. At the time of Plaintiff's arrest, the Department had before it: (a) uncontroverted evidence that Plaintiff had engaged in unlawful conduct; and (b) a complaint filed by a victim requesting that Plaintiff be prosecuted and a restraining order be issued against Plaintiff based on his conduct. In short, because on the clear disparity between these two situations, Plaintiff has failed to allege that he is similarly situated to anyone. Plaintiff's equal protection claim must therefore be dismissed.

15

POINT IV

**THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED**

**A.    Chief Hall Had No Personal Involvement In Any Constitutional Deprivation**

The Complaint names David Hall, Chief of the Harrison Police Department, as a defendant individually in his personal capacity. However, as set forth in the affidavits of Anthony Marraccini, Edward Lucas and Musollino, Chief Hall was not involved in this matter at all.

For example, Captain Marraccini clearly stated that he was in charge of the investigation:

> 22.    I personally supervised the investigation of the August 8, 2007 incident at Annie's Café. Chief David Hall, who is named as an individual Defendant, was not involved whatsoever and was not even present at the station when this incident occurred or was being investigated. Plaintiff's allegations that Chief Hall gave orders for the arrest of Plaintiff are totally false.

Marraccini Aff. ¶ 22. Without any personal involvement, the claims against Chief Hall must be dismissed. *See, e.g., Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (in order to sustain a § 1983 claim against an individual, a plaintiff must establish that the named defendant was "directly and personally responsible for the purported unlawful conduct"). A defendant cannot be held personally responsible merely because he or she was in a high position of authority. *Sharp v. State*, 2007 WL 2480428*5 n.7 (E.D.N.Y. 2007) *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted). *See also Rodgers v. City of Rochester*, 2007 WL 1557465 *8 (W.D.N.Y. 2007) ("a plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation").

Thus, Chief Hall cannot be held personally liable in this matter.

16

**B.    The Individual Defendants Are Protected By Qualified Immunity**

Even assuming that the Plaintiffs could set forth a constitutional violation, the individual defendants are protected by the doctrine of qualified immunity. *See Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) ("Because qualified immunity is an immunity from suit — not merely an immunity from judgment — assertions of qualified immunity should be addressed as early as possible in the judicial process.").

Even when there is no probable cause to arrest, a police officer is immune from a false arrest claim "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Lee*, 136 F.3d 94, 102 (2d Cir. 1997) *quoting Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *accord Posr v. Court Officer Shield #207*, 180 F.3d 409, 416 (2d Cir. 1999). In other words, "[i]n an unlawful arrest action, an officer is immune if he has 'arguable probable cause,' and is subject to suit only if his 'judgment was so flawed that no reasonable officer would have made a similar choice.'" *Provost v. City of Newburgh*, 262 F.3d 146, 169 (2d Cir. 2001) *quoting Lee*, 136 F.3d at 103; *accord Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ("we examine all of the information the officers possessed when they applied for the arrest warrant . . . If there remains an objective basis to support arguable probable cause, remaining factual disputes are not material to the issue of qualified immunity and summary judgment should be granted to the defendant on the basis of qualified immunity"). "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." *Id.*

In light of the statement Clark provided attesting to Plaintiff's conduct, the individual defendants' conduct was entirely reasonable. They are therefore protected by qualified

17

immunity. Also, since Chief Hall had absolutely nothing to do with the investigation or arrest of

Plaintiff, he must be dismissed for this reason as well.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Defendants' motion to dismiss the Complaint in its entirety.

Dated:  December 10, 2007                          Respectfully submitted,
           Garden City, New York

                                           BOND, SCHOENECK & KING, PLLC

                                     s/Mark N. Reinharz
                                    By:     Mark N. Reinharz  (6201)
                                    Attorneys for Defendants
                                    1399 Franklin Avenue
                                    Garden City, New York  11530
                                    (516) 267-6320

Of Counsel:  Jessica C. Satriano

CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2007, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic service upon the following parties and participants:

Jonathan Lovett, Esq.
222 Bloomingdale Road
White Plains, New York  10605
Attorney for Plaintiff


                                    s/    Mark N. Reinharz
                                          Mark N. Reinharz (6201)
                                    Bond, Schoeneck & King, PLLC
                                    Attorneys for Defendants
                                    1399 Franklin Avenue, Suite 200
                                    Garden City, New York  11530

20