# Affidavit of Anthony Marraccini

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
RALPH TANCREDI,

                    Plaintiff,
       -against-
                                              07 Civ. 7485 (WCC)
DAVID HALL, individually, VINCENT
MUSSOLINO, individually, EDWARD               AFFIDAVIT
LUCAS, individually, RICHARD "DOE"
and LAWRENCE "DOE",


                    Defendants.
------------------------------------ X
```

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF WESTCHESTER )

ANTHONY MARRACCINI, being duly sworn, deposes and says:

1. I am a police officer in the Town/Village of Harrison Police Department ("Town"). I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint in the above-captioned matter.

2. I have been employed as a police officer by the Town for more than 22 years. Presently, I hold the rank of Captain. I was in charge of the investigation relating to the arrest of the Ralph Tancredi ("Plaintiff") on August 8, 2007.

3. The Plaintiff is a police officer employed by the Town since 2005.

**September 4, 2005 Incident Between Plaintiff and Sofia Saenz**

4. In September 2005, the Plaintiff was involved in an incident with his then-girlfriend, Sofia Saenz. According to the police reports, Plaintiff went to Ms. Saenz's residence but she was not present. He later claimed to see her returning in the early morning hours of

September 4, 2005. Plaintiff approached her vehicle, and among other things, according to Ms. Saenz, Plaintiff punched the windshield of her car causing it to break, and yelled obscenities at her. Copies of the police reports are annexed hereto as Exhibit 1.

5. As a result of this incident, Plaintiff was disciplined. Rather than go through formal discipline under §5711-q of the New York Unconsolidated Laws, Plaintiff elected not to contest any formal charges and agreed to a forfeiture of 20 days of paid leave. A copy of the paperwork signed off by Plaintiff relating to this matter is annexed hereto as Exhibit 2.

**June 2, 2007 Incident at "My Place" Bar**

6. On June 2, 2007, Plaintiff, while off duty, was investigated for becoming involved in an altercation with patrons and employees of a bar in Harrison known as "My Place." Plaintiff allegedly attempted to assault another patron in the bar, but before doing so, ran into the bartender causing her to fall backwards, hit a shelf, and injure her back. A copy of the Misdemeanor Complaint signed by the bartender is annexed hereto as Exhibit 3.

7. As a result of this incident, Plaintiff was suspended with pay from his position in the Town Police Department.

8. On June 26, 2007, Plaintiff was served with disciplinary charges relating to the June 2, 2007 incident. These disciplinary charges are currently pending.

**August 8, 2007 Incident Outside "Annie's Café"**

9. On August 8, 2007, Plaintiff was involved in yet another altercation outside a restaurant called "Annie's Café." According to Joshua Clark and Sophia Saenz (Plaintiff's former girlfriend), Plaintiff stopped his car in the middle of the street in front of Annie's Café — where Ms. Saenz was employed at the time — and quickly exited the vehicle and approached the

two of them. Plaintiff requested that Ms. Saenz speak to him but she declined. Eventually Plaintiff bumped the chest of Mr. Clark several times and slapped him on the arm.

10. The police were called to the location. The Supervisor on the shift at that time was Sergeant Vincent Musollino. I also contacted Detective Sergeant Edward Lucas and requested that he proceed to the scene and conduct an investigation. In addition, several other police officers from the department went to the scene including Police Officers Wong, Favata and O'Mara.

11. Based on the statements given to the police by the individuals at the scene, Plaintiff, Mr. Clark and Ms. Saenz were asked to come to the police station for further investigation, and voluntarily agreed to do so. Each of the three individuals involved, Mr. Clark, Ms. Saenz and Plaintiff were each given a ride to police headquarters in separate vehicles.

12. Ms. Saenz and Mr. Clark were interviewed at police headquarters and provided the Department with written statements. Plaintiff refused to provide the police with any written statement.

13. According to Clark, the incident occurred as follows:

> At approximately 9 p.m. Sofia and I were leaving Annie's Café and Ralph pulled unaware of who he was I heard Sofia say – "OH SHIT!" Immediately I knew who he was – the "EX". He pulled his car and asked how we were. Asked if Sofia was happy. He then asked how I was and he proceeded to look me up and down. In my unprofessional opinion he looked coked out of his mind. I could see that Sofia was getting upset. I started to rub her back and Ralph said are you going to let him do that in front of me?? He then asked to talked [sic] to me and I said no Sofia is upset and we need to go. He then got angry and kept going after Sofia to talk. After several attempts to grab Sofia to go inside Anne's Café Ralph got extremely vulgar and pointed his finger in my face. He was raging about them being together for 4 years and some other nonsense. Ralph then trapped Sofia in between buildings. I went to grab her to move her inside and Ralph hit my arm. A few chest

> bumps and name callings later I opened the door to Annie's and asked Annie Perari (owner of Annie's) to call the cops. Out of fear for Sofia's safety, I went to my vehicle and grabbed my bat for protection from the nut-case that was storming around the street. I walked back across the street and pointed the bat at Ralph and said – get the fuck out of here. He then got even more angrier and said what you going to hit me with that. Finally with bat in hand I got Sofia inside. Walking with her inside Ralph followed us in. Annie said the cops are on their way. Ralph said good this asshole just threatened a cop with a bat. I stood in the middle so Ralph couldn't get to Sofia. With the look in his eye god knows what he would have done. The police arrived and he still insisted to talk to her and her response was just leave. In fact that's all she repeatedly said to him from the start of this whole incident.

Exhibit 4.

14. Ms. Saenz gave a statement corroborating Clark's version of the events. She stated:

> At approximately 9 p.m. Josh and I were leaving Annie's Café. Ralph drove by at the same moment. He stopped the car and got out. Ralph kept on asking to talk to me. I asked Josh to wait for me to talk to Ralph. Ralph got jealous that I had to ask Josh and started saying that I shouldn't ask for permission. Ralph was getting upset. He kept saying that he wanted to talk to me but I said it wasn't a good idea. Josh wanted me to go inside the restaurant and when he touched my head to lead me in Ralph pushed his hand telling him not to touch me. Josh didn't like it and went to his car and took a bat. They started yelling and cursing at each other. I thought they were going to fight so I went in the restaurant. Police came.

Exhibit 5.

15. Mr. Clark was interviewed on tape. A copy of the DVD of this videotaped interview of Mr. Clark is annexed hereto as Exhibit 6. Mr. Clark also requested that an order of protection be issued. Mr. Clark specifically stated that he wanted the case to be prosecuted as he was concerned that this kind of incident might happen again.

4

16. Plaintiff refused such an interview, but did say to me that he did not want Mr. Clark to be arrested.

17. Upon information and belief, the District Attorney has provided all of the information to Plaintiff's attorney as a result of the pending criminal trial.

18. Based on the information received from Mr. Clark and Ms. Saenz, as well as Mr. Clark's insistence that Plaintiff be charged, Plaintiff was arrested and charged with harassment. A copy of the Information Complaint signed by Mr. Clark is annexed hereto as Exhibit 7.

19. On August 8, 2007, the Court issued an order of protection for Mr. Clark requiring Plaintiff to stay away from Mr. Clark. Shortly thereafter, at direction of the District Attorney's Office, an order of protection was issued requiring Plaintiff to stay away from Ms. Saenz. See Exhibit 8.

20. The order of protection relating to Ms. Saenz has largely been ignored by Plaintiff who was again arrested on September 7, 2007 for violations of these court orders. These charges are currently pending as well.

21. Plaintiff is currently barred from contacting both Ms. Saenz and Mr. Clark. The Court has extended the order of protection for Ms. Saenz through September 28, 2008. The order of protection for Mr. Clark is in effect up through August 17, 2008. See Exhibit 9.

22. I personally supervised the investigation of the August 8, 2007 incident at Annie's Café. Chief David Hall, who is named as an individual Defendant, was not involved whatsoever and was not even present at the station when this incident occurred or was being investigated. Plaintiff's allegations that Chief Hall gave orders for the arrest of Plaintiff are totally false.

23. Finally, with regard to Plaintiff's claim that he was treated differently than Police Officer Robert Carlucci, it should be noted that at no time did Carlos Carillo or Anthony

5

Petrozza ever file criminal complaints against P.O. Carlucci. That is, unlike the case herein where there was a specific criminal complaint and request for an order or protection, there was no such complaint or request made against P.O. Carlucci.

    24.    Based on the foregoing, it is clear that the officers did have probable cause to make the arrest. As a result, the complaint herein should be dismissed in its entirety.

                                                                                    Anthony Marraccini

Sworn to before me this
6th day of December, 2007

_____
Notary Public

Jessica C. Satriano
Notary Public, State of New York
No. 02SA6176548
Qualified in Nassau County
Commission Expires October 29, 20 11

# Affidavit of Edward Lucas

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
RALPH TANCREDI,

                Plaintiff,

-against-

                                        07 Civ. 7485 (WCC)

DAVID HALL, individually, VINCENT
MUSSOLINO, individually, EDWARD               **AFFIDAVIT**
LUCAS, individually, RICHARD "DOE"
and LAWRENCE "DOE",

                Defendants.
------------------------------------ X

STATE OF NEW YORK    )
                                    ss.
COUNTY OF WESTCHESTER )

      EDWARD LUCAS, being duly sworn, deposes and says:

      1.     I am a police officer in the Town/Village of Harrison Police Department ("Town"). I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint in the above-captioned matter.

      2.     I have been employed as a police officer by the Town for approximately 11 years. Presently, I hold the rank of Sergeant. I was involved in the investigation relating to the arrest of Ralph Tancredi ("Plaintiff") on August 8, 2007.

      3.     On August 8, 2007, I was contacted by Captain Anthony Marraccini and told that there was an incident at "Annie's Café" in Harrison. I was told that the incident involved Ralph Tancredi and that I should conduct an investigation.

      4.     I was aware that prior to the August 8, 2007 incident, Plaintiff had been involved in an altercation with Sophia Saenz in September 2005. In addition, I personally investigated Plaintiff in June 2007 for an incident at a local bar known as "My Place." On June 2, 2007,

Plaintiff, while off duty, was involved in an altercation with patrons and employees of a bar in Harrison known as "My Place." Plaintiff allegedly attempted to assault another patron in the bar, but before doing so, ran into the bartender causing her to fall backwards, hit a shelf, and injure her back. A copy of the Misdemeanor Complaint signed by the bartender is annexed hereto as Exhibit 3.

5. I arrived at Annie's Café at around 9:00 p.m. When I arrived I noticed that Mr. Tancredi's car was parked unoccupied into the northbound traffic lane of Harrison Avenue, inhibiting traffic. I also noticed that there were several other police officers already on the scene. I went inside and spoke to Sergeant Vincent Musollino, who informed me what he had learned so far.

6. I also spoke to Joshua Clark who was adamant about pressing charges against the Plaintiff, because the Plaintiff had slapped Mr. Clark's arm.

7. Based upon the information we had at the time, Mr. Clark, Ms. Saenz and Plaintiff were asked to go to the Police Station for further investigation. All voluntarily agreed, and each of these individuals were given a ride to police headquarters in separate vehicles.

8. Both Ms. Saenz and Mr. Clark provided us with written statements. Plaintiff refused to provide the Department with any statement. Copies of the written statements provided by Ms. Saenz and Mr. Clark are annexed hereto as Exhibits 4 and 5.

9. Mr. Clark also provided us with a videotaped statement. During his videotaped statement Mr. Clark described in detail what had occurred, *i.e.*, how he had been slapped by Plaintiff, and how he wanted to press charges against Plaintiff. A copy of this videotaped statement is annexed hereto as Exhibit 6.

10. At the police station Mr. Clark again requested that formal charges be brought against Plaintiff. He also requested that an order of protection be issued. He stated that he was concerned that these kinds of incidents would re-occur and wanted to make sure that Plaintiff did not bother him again. A formal complaint was signed by Mr. Clark relating to this incident. See Exhibit 7.

11. At no time did Chief of Police David Hall direct me on how to proceed in this investigation.

12. Based on the information available to me at the time, I believe that there was, in fact, probable cause to arrest Plaintiff for his conduct on August 8, 2007.

13. In light of the foregoing, the complaint should be dismissed in its entirety.

_____
Edward Lucas

Sworn to before me this
6th day of December, 2007

_____
Notary Public

Jessica C. Satriano
Notary Public, State of New York
No. 02SA6176548
Qualified in Nassau County
Commission Expires October 29, 20 11

# Affidavit of Vincent Musollino

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
RALPH TANCREDI,

                        Plaintiff,
  -against-

                                                                07 Civ. 7485 (WCC)

DAVID HALL, individually, VINCENT
MUSSOLINO, individually, EDWARD                    **AFFIDAVIT**
LUCAS, individually, RICHARD "DOE"
and LAWRENCE "DOE",

                        Defendants.
------------------------------------- X

STATE OF NEW YORK    )
                               ss.
COUNTY OF WESTCHESTER )

      VINCENT MUSOLLINO, being duly sworn, deposes and says:

      1.    I am a police officer in the Town/Village of Harrison Police Department ("Town"). I am submitting this affidavit in support of the Defendants' motion to dismiss the complaint in the above-captioned matter.

      2.    I have been employed as a police officer by the Town for approximately 14 years. Presently, I hold the rank of Sergeant. I was involved in the investigation relating to the arrest of Ralph Tancredi ("Plaintiff"), a police officer in the Town/Village of Harrison Police Department on August 8, 2007.

      3.    I was contacted by the Desk Officer, Frank Morabito that there was an incident at a local bar involving Ralph Tancredi. I telephoned Captain Anthony Marraccini and he directed me, a supervisor, to go to the scene and investigate because a police officer was involved.

      4.    When I arrived at the scene, police officers Melissa Favata and Barry O'Meara were already there. Sophia Saenz and Joshua Clark were already inside Annie's Café. Plaintiff

was outside Annie's Café, and his car was parked on the northbound side of Harrison Avenue, unoccupied, blocking traffic. No parking is allowed on that side of the street.

5. Plaintiff came up to me and stated that Mr. Clark had threatened him with a bat. He also said that Mr. Clark would not let him talk to Ms. Saenz. He stated that he wanted Mr. Clark charged with menacing.

6. I then went inside Annie's Café and spoke to Mr. Clark and Ms. Saenz. They had very different version of what had occurred than what Plaintiff had said. They both claimed that while they were exiting the Annie's Café, Plaintiff drove up in his car and began talking to them through the passenger window. He then stopped the car and exited the vehicle. Plaintiff ultimately became angry when Ms. Saenz would not speak with him and Mr. Clark would not allow her to do so. When Mr. Clark touched Ms. Saenz to try and escort her back into Annie's Café, Plaintiff slapped his arm. Mr. Clark then asked that the owner of Annie's Café to call the police. Thereafter, Mr. Clark retrieved a small baseball bat from his car, pointed it towards Plaintiff, and told him (Plaintiff) to stay away from them.

7. I was aware that prior to the August 8, 2007 incident, Plaintiff had been involved in an altercation with Ms. Saenz in September 2005 and that he had been investigated in June 2007 for an incident at a local bar known as "My Place."

8. Based upon the information we had at the time, Mr. Clark, Ms. Saenz and Plaintiff were asked to go to the Police Station for further investigation. All voluntarily agreed, and each of these individuals were given a ride to police headquarters in separate vehicles.

9. Both Ms. Saenz and Mr. Clark provided us with written statements. I asked Mr. Tancredi to provide a written statement. Plaintiff refused to provide the Department with any

2

written statement. Copies of the written statements provided are annexed hereto as Exhibits 4 and 5.

10. Mr. Clark also provided us with a videotaped statement. In his videotaped statement Mr. Clark described in detail what had occurred and stated that he wanted to press charges against Plaintiff. Mr. Clark requested that formal charges be brought against Plaintiff. He stated that he was concerned that these kinds of incidents would re-occur and wanted to make sure that Plaintiff did not bother him again. A copy of this videotaped statement is annexed hereto as Exhibit 6.

11. A formal complaint was signed by Mr. Clark relating to this incident. See Exhibit 7.

12. At no time did Chief of Police David Hall ever direct me to bring Plaintiff to headquarters or direct me to proceed in any particular manner in conducting this investigation. In fact, I had no contact with Chief Hall at all on August 8, 2007 relating to this incident. Plaintiff was brought to headquarters based on the information I had gathered at the scene of the incident.

13. Based on the information available to me at the time, I believe that there was, in fact, probable cause to arrest Plaintiff for his conduct on August 8, 2007.

14. In light of the foregoing, the complaint should be dismissed in its entirety.

_____
Vincent Musollino

Sworn to before me this
6th day of December, 2007

_____
Notary Public

Jessica C. Satriano
Notary Public, State of New York
No. 02SA6176548
Qualified in Nassau County
Commission Expires October 29, 20_11_

3

# Affidavit of Joshua Clark

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
RALPH TANCREDI,

                       Plaintiff,
    -against-

                                                       07 Civ. 7485 (WCC)
DAVID HALL, individually, VINCENT
MUSSOLINO, individually, EDWARD                  **AFFIDAVIT**
LUCAS, individually, RICHARD "DOE"
and LAWRENCE "DOE",

                       Defendants.
------------------------------------- X

STATE OF WISCONSIN    )
                                 ss.
COUNTY OF RACINE      )

    JOSHUA CLARK, being duly sworn, deposes and says:

    1.    I am a civilian presently residing in Wisconsin.

    2.    On the night of August 8, 2007, I was with my then-girlfriend, Sophia Saenz, at a restaurant/bar in Harrison, New York, known as Annie's Café.

    3.    When Sophia and I were leaving the Café, there was an incident between myself, Ms. Saenz, and Ralph Tancredi.

    4.    The details of the incident are set forth in my August 8, 2007 statement which is annexed hereto.

    5.    I voluntarily provided the Police Department with both an oral and written statement on the night of August 8, 2007. At no time was I coerced into making/filing any statement against Ralph Tancredi or anyone. To the contrary, I informed the police that I wished to pursue charges against Mr. Tancredi based on my concern that if I did nothing, he would likely continue his aggressive conduct. Similarly, at no time did anyone induce or coerce me to

seek an order of protection against Mr. Tancredi. The police simply asked what I would like to do, and I told them.

6. At no time did I observe any member of the Police Department induce or coerce Sophia Saenz to make any statement against Mr. Tancredi. At no time did Ms. Saenz ever tell me that she was coerced by any member of the Department or anyone else to make any statement against Mr. Tancredi.

7. In addition, I voluntarily signed a criminal complaint against Mr. Tancredi based on his slapping of my arm. A copy of this statement is annexed hereto. Again, I was not coerced or forced to do so, but rather this was my voluntary decision. Any suggestion that the police coerced me to do anything is false.

_____
Joshua Clark

Sworn to before me this
5 day of December, 2007

_____
Notary Public